UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLATT, LLC, et al.,<br>         Plaintiffs,<br><br>    v.<br><br>OPTUMRX, INC.,<br>         Defendant. | Case No. 25-cv-07018-RS<br><br>**ORDER GRANTING REMAND** |

I. INTRODUCTION

This action was filed in Alameda County Superior Court in September of 2020. Nearly five years later, defendants filed a notice of removal, asserting removal jurisdiction exists under the "federal officer removal statute," 28 U.S.C. § 1442(a)(1), because plaintiffs seek to hold them liable for conduct they contend was "connected with" their "actions under a federal agency—the Veteran's Health Administration ("VHA")." Just under 30 days after that, defendants filed an "amended" notice of removal, still based on the theory that their challenged conduct was "connected with" their actions "under" the VHA, but adding the Centers for Medicare & Medicaid Services ("CMS") as an additional agency "under" which they purportedly acted.

Plaintiffs responded to the initial notice of removal with a motion to remand, contending the removal was untimely and that there was no substantive basis for removal. Plaintiffs responded to the amended notice of removal with a motion to strike it both on procedural grounds that it was filed without leave of court, and because, in plaintiffs' view, its attempt to add new substantive

grounds for removal was untimely. Plaintiffs also filed a separate motion to remand addressed to the amended notice of removal. The two motions to remand and the motion to strike were heard on November 21, 2025. For the reasons explained below, remand will be granted.

## II. BACKGROUND

Plaintiffs are 21 independent pharmacies. Defendant OptumRx, ("Optum") is alleged to be a wholly owned subsidiary and/or affiliate of United Healthcare Group, Inc. Optum operates as a pharmacy benefits manager ("PBM") for various health insurance plans. Under the terms of the parties' contracts, plaintiffs fill prescriptions for Optum's health plan clients and submit claims for reimbursement to Optum. Plaintiffs allege only a handful of PBMs dictate the reimbursement rates for dispensing brand and generic prescription drugs to patients. Optum purportedly controls approximately 25% of the national PBM market alone.

Plaintiffs allege Optum has "systematically abused" its price-setting power in an attempt to drive independent pharmacies out of business, in breach of the contracts and its attendant duty of good faith and fair dealing. Plaintiffs contend Optum seeks to divert business that would otherwise go to local, independent pharmacies to its own affiliated "mail order" pharmacy.

As noted, plaintiffs filed their original complaint in 2020. Optum contends the complaint did not disclose a basis for removal, and that therefore the 30-day period for removal following its receipt of the initial pleading was never triggered. *See* 28 U.S.C. § 1446(b)(1). Optum further argues the alternative 30-day period for removal specified in § 1446(b)(3) likewise never began to run. That section requires defendants to remove within 30 days once they receive "through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

Optum contends it discovered the case was removable "based on its own investigation," shortly after plaintiffs were granted leave to amend in state court this past summer. Optum does *not* argue the action only became removable upon the amendment; its position is no time limit for removal was ever triggered where the basis of removal was not apparent on the face of the

complaint or from any subsequent pleading or other paper it received, and that it could properly remove whenever it happened to investigate and decide removal was available.

Plaintiffs, in turn, argue Optum could not unilaterally extend its time to remove indefinitely. While plaintiffs do not press an argument that Optum's time to remove was triggered by service of the original complaint (because it presumably implicated the "federal officer" issue from the outset), they contend the 30-day time to remove began to run no later than 2023, when Optum served discovery responses showing that it had processed 4,819 prescription drug claims identifying "VETERANS HEALTH ADMIN" as the insurance carrier.

It is that very role of the VHA as an insurance carrier that Optum contends gives rise to "federal officer" removal. Optum, however, relies on case law suggesting that only a pleading or other paper served *on the defendant*, triggers the 30-day period of § 1446(b)(3), and therefore discovery responses that it served on plaintiffs are irrelevant.

Technically, separate motions to remand addressed to the original and amended notices of removal likely are unnecessary. Either this matter should be remanded, or its should not, and a single motion could address the issues raised by both the original and the amended notices. Treating the two notices of removal separately, however, is useful for purposes of analysis. The flow chart is as follows:

1. Was the original notice of removal timely? If no, remand is required.

2. If the original notice was timely, is the invocation of "federal officer" jurisdiction viable? If yes, remand must be denied, and it will be unnecessary to consider the viability of the amended notice of removal.

3. If, and only if, the original notice was timely, but the invocation of "federal officer" jurisdiction is not viable with respect to the claim that defendants acted "under" the VHA, then the impact of the amended notice of removal must be evaluated. By defendants' own arguments, the amended notice of removal is timely only if the initial notice of removal is timely. Accordingly, the issue will be whether that notice should be stricken based on failure to seek leave to file it. If

1    so, then either the matter should be remanded, or defendants should be allowed the opportunity to
2    seek leave to amend their notice.
3         4. If the amended notice is not stricken, the remaining question will be whether defendants
4    can properly invoke "federal officer" jurisdiction with respect to the CMS, even though their
5    arguments for jurisdiction arising from their interactions with the VHA have failed.

## III.  LEGAL STANDARD

A defendant has the right to remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Most commonly, original jurisdiction exists when a state case presents a federal question, involves parties with complete diversity of citizenship plus at least $75,000 as the amount in controversy, or falls under maritime law. See 28 U.S.C. §§ 1331, 1332, 1333. Here, however, Optum invokes 28 U.S.C. § 1442(a)(1), which authorizes removal of actions against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . .  for or relating to any act under color of such office."). To support removal on this basis, "Defendants must show: (1) they were "acting under" federal officers, (2) they can assert a colorable federal defense, and (3) Plaintiffs' injuries were for or relating to Defendants' actions." *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1106 (9th Cir. 2022)

Ordinarily, "[i]t is to be presumed that a cause lies outside the limited jurisdiction of the federal courts." *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (cleaned up). In the case of the federal officer removal statute, however, longstanding public policy calls for it to be construed "broadly in favor of removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252–53 (9th Cir. 2006).

## IV. DISCUSSION

A. <u>Timeliness</u>

1. *§ 1446(b)(1)—30 days from service of original complaint*

As noted, plaintiffs do not press an argument that Optum's time to file a notice of removal began to run when it received the original complaint in 2020. Because the question is one of jurisdiction, however, it is appropriate to address it. It may be true that the availability of removal under 28 U.S.C. § 1442(a)(1), the "federal officer" removal provision, was not expressly spelled out in the allegations of the complaint. There is no suggestion, however, that Optum was unaware at the outset of this litigation that the VHA was one of the health plan sponsors for whom it processed prescription drug benefits. Optum insists it "discovered the grounds of removal based on its own investigation," in 2025, but it does not explain what facts it discovered at that point in time, if any, or why those facts were not already in its possession.

A reasonable inference to draw from the record is that Optum did not "discover the grounds of removal" in the sense of learning new facts, but that when reviewing legal strategy after the state court allowed an amended complaint, counsel realized for the first time that an additional legal argument could be made. To support its contention that no time clock for removal ever began to run, Optum quotes the decision in *Garcia v. Cent. Coast Restaurants, Inc.*, 2018 WL 6267829, at *3 (N.D. Cal. June 26, 2018), which stated "the Ninth Circuit has made clear there is no time limit placed upon a defendant's independent arrival at grounds for removability." *Garcia*, in turn, relied on *Roth v. CHA Hollywood Medical Center, L.P.* 720 F.3d 1121 (9th Cir. 2013), a case in which defendants contended removal was proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453(c)(1). *Roth* held "a defendant who has not lost the right to remove because of a failure to timely file a notice of removal under § 1446(b)(1) or (b)(3) may remove to federal court when it discovers, based on its own investigation, that a case is removable." *Id.* at 1123.

In *Roth*, the plaintiff seeking remand did not contend the notice of removal was *untimely*. Rather, plaintiff argued no right to remove had ever *arisen*, because the face of the complaint did

not establish removability, and defendants had not subsequently received "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." In other words, the plaintiff was insisting § 1446(b)(1) and (b)(3) provide the *authority* for removal, and that unless one of those provisions is triggered, no right to remove arises. *See id.* at 1124.

*Roth* rejected that reading, finding instead that removal is generally authorized by § 1441, and that § 1446(b)(1) and (b)(3) are merely procedural limitations on the right to remove, which set time limits if triggered.[1] Thus, the issue and holding in *Roth* do not directly speak to the question here, which is what circumstances start the 30-day clock running under § 1446(b)(1) or (b)(3). *Roth*, however, did observe existing circuit precedent holds a defendant does not have a duty of inquiry if the initial pleading or other document is "indeterminate" with respect to removability. 720 F.3d at 1125 (citing *Harris v. Bankers Life and Casualty Co.,* 425 F.3d 689, 693–94 (9th Cir. 2005). "Thus, even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Id.*

The concept of a pleading being "indeterminate," though, most often arises in the context of potential diversity jurisdiction. In *Harris*, for example the complaint did not state the current citizenship of one party, only his past residence. 425 F.3d at 693. The court observed, "[i]ndeed, it is not uncommon for a state court pleading to omit the necessary facts needed to determine diversity." *Id.*

It is relatively easy to see that a state court complaint is "indeterminate" as to the

---

[1] Section 1441 authorizes removals on the familiar grounds of federal question or diversity, as well as in other specified less common circumstances. Here, Optum contends removal is authorized under § 1442. While § 1446, entitled "Procedure for Removal of Civil Actions," certainly governs removals under § 1442 as well as those under § 1441, the precise application of the time limits in § 1446(b)(1) and (b)(3) must take into account the nature of the basis for removal.

possibility of diversity jurisdiction if it does not spell out the citizenship of the parties, or facts showing the amount in controversy, and why precedent does not place any duty on defendants to investigate further, allowing them instead to await receipt from plaintiffs of some further document filling in the jurisdictional gap.

Less apparent, however, is when a defendant should be responsible for knowing there is a right to remove under federal question jurisdiction, or, as here, under § 1442. For example, in *Cantrell v. Great Republic Ins. Co.,* 873 F.2d 1249 (9th Cir. 1989), defendants had removed based on a purported federal question following the filing of an amended complaint. The Ninth Circuit concluded the removal was untimely, because the original complaint presented the same grounds for removal, namely preemption under ERISA. While the complaint did not expressly state the insurance policy in dispute was subject to ERISA, defendants had effectively conceded that no discovery was necessary to discover the "true nature" of the claim, and that they had known the action was "really an ERISA case" from the outset. *Id.* at 1255 n. 11 & 1256. Therefore, the time period for removal began upon service of the original complaint, and the notice of removal filed after the amended complaint was untimely. In other words, even though a fact critical to existence of removal jurisdiction—that the insurance policy sued on was part of an ERISA plan—did not appear in the complaint, defendants' own knowledge as to the nature of their business was sufficient to trigger the § 1446(b)(1) deadline.

Thus, while case law amply supports the broad principle (at least in diversity cases) that a defendant is under no obligation to investigate facts outside those alleged in the complaint to determine if there is a potential to remove, that does not automatically preclude the § 1446(b)(1) time period for removal from beginning to run where the issue is not really that the facts are unknown or uncertain, but the appropriate application of law to the known facts. Here, Optum does not suggest it only recently discovered that its clients included VHA and CMS. Rather, the most reasonable inference is that Optum came upon the arguments it now advances as a basis for removal when conducting further *legal analysis* of the claims and defenses in this action, as part of developing its ongoing litigation strategy. Just as the *Cantrell* defendant was held responsible for

timely asserting jurisdiction based on ERISA preemption notwithstanding that it did not expressly appear on the face of the complaint, Optum cannot be excused from failing to assert its claim of a right to remove under § 1442 at the outset.[2]

2. *§ 1446(b)(3)—30 days from service of other document*

Even assuming the 30-day window for removal of § 1446(b)(1) did not open upon Optum's receipt of the original complaint five years ago, the removal was untimely under § 1446(b)(3) because it came long after Optum responded to written discovery requests propounded by plaintiff by producing data on over 4,000 claims it had processed involving the Veteran's Health Administration and over 400,000 claims involving Medicare. Optum insists that document production cannot be seen as an "other paper" under § 1446(b)(3) for two reasons.

First, Optum contends the discovery responses it provided did not include enough detail regarding its interactions with the VHA and CMS to determine if all of the requisites for removal under the "federal officer" statute were satisfied. A defendant, however, must "apply a reasonable amount of intelligence in ascertaining removability" from the pleading, motion, order, or other paper. *See Kuxhausen v. BMW Financial Services NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013). That Optum was processing claims at the direction of VHA and CMS was "unequivocally clear and certain" from the document production; there is no requirement that the intricacies of the relationship be spelled out with greater precision.

Second, Optum argues that § 1446(b)(3) can only be triggered by a pleading or other paper served by plaintiff, or perhaps a third party, on defendant, not by information produced *by defendant*. While there may be some conflict in the authorities, the better rule is that at least where defendant compiles information in response to discovery requests from the plaintiff, the resulting

---

[2] No one would suggest a party's time to remove would not begin to run merely because its lawyer did not research, and was not subjectively aware, that a complaint asserting violation of a federal law is removable. Although the facts here are not as stark, the distinction does not support a different result.

discovery responses can satisfy the "other paper" requirement of § 1446(b)(3). *See Cadena v. W.G. Yates & Sons Construction Co.* 2023 WL 8018049, at *5 (E.D. Cal. Nov. 20, 2023) (surveying case law and concluding, "this court now joins the several district courts in the Ninth Circuit that have held that such responses by a defendant to a plaintiff's request may constitute 'other paper.'"). Accordingly, even if Optum was under no time limit to remove when it first received the complaint in 2020, the 30-day clock began to run in December of 2023, and its notice of removal filed in August of this year was untimely. Remand must be granted.[3]

## V. CONCLUSION

Plaintiffs' motion to remand directed at the original notice of removal is granted. There is no viable argument that the amended notice of removal alters the timeliness analysis, therefore the motion to strike it, and the motion to remand based on it are moot, in light of the granting of the first remand motion.

At oral argument, Optum requested that any order granting remand be stayed, pending a potential appeal under 28 U.S. Code § 1447(d). To avoid jurisdictional uncertainty as well as unnecessary applications for "emergency" appellate relief, the effective date of this order is extended to January 23, 2026. In the event Optum has not obtained a stay from the appellate court by that date, the action will be remanded to Alameda Superior Court.

---

[3] Given the removal was untimely, it is unnecessary to reach plaintiffs' contentions that Optum failed to show a right to remove under § 1442(a)(1). It is worth noting, however, the conclusion that either the original complaint or the 2023 document production was sufficient to trigger the removal time limit does not mean the matter was necessarily *actually* removable. Removal under § 1442(a)(1) requires a defendant to show "(a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense." *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017). It is not clear Optum could meet either of the latter two requirements, particularly given that Optum's purported federal preemption defenses are generally available to any defendant and therefore do not "aris[e] out of [defendant's] official duties." *See City & County of Honolulu*, 39 F.4th at 1110.

1  **IT IS SO ORDERED**.

3  Dated: November 25, 2025

_____
RICHARD SEEBORG
Chief United States District Judge